IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In Re:

ANKOD ENTERPRISE, LLC        CASE NO.    16-14706-EPK

    Debtor.                  CHAPTER    11

_____/

**CREDITOR VALENCIA SQUARE RETAIL, LLC'S MOTION FOR RELIEF FROM
THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, MOTION TO COMPEL
DEBTOR TO PAY POST PETITION RENT, TO COMPEL ASSUMPTION OR
REJECTION OF UNEXPIRED LEASE AND TO COMPEL DEBTOR TO VACATE
AND SURRENDER POSSESSION OF LEASED PREMISES**

Creditor/Landlord, VALENCIA SQUARE RETAIL, LLC ("Valencia" or "Landlord"), by

and through undersigned counsel and pursuant to 11 U.S.C. §§ 362(d), 365(d)(2) and (3), and

Federal Rules of Bankruptcy Procedure 6006(b) and 9014, hereby files this Motion for Relief from

the Automatic Stay or, in the alternative, Motion to Compel Debtor, ANKOD ENTERPRISE, LLC

("Debtor" or "Ankod")[1], to Pay Post Petition Rent, to Compel Assumption or Rejection of

Unexpired Lease, and to Compel Debtor to Vacate and Surrender Possession of Leased Premises

(the "Motion"), stating as follows:

I.      **INTRODUCTION AND BACKGROUND**

1.      On March 31, 2016 (the "Petition Date"), the Debtor commenced this proceeding

by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code").

2.      The Debtor, as tenant, leases certain non-residential real property located at 6609

Woolbright Road, Bay 400, Boynton Beach, Florida 33437 (the "Premises") from Valencia, as

successor in interest to Woolbright Jog, LLC (the original landlord), pursuant to a to a real property

---

[1] The Debtor operates the premises that is the subject of this Motion under the fictitious name "Aunt D's Child Care of Palm Beach."

lease dated August 25, 2009 (the "Lease").  A true and correct copy of the Lease is attached hereto as **Exhibit "A."** [2]

3.        The Debtor purportedly conducts its business operations (a children's day care center), to the extent it may still have any ongoing operations, at the Premises.

4.        Pursuant to the terms of the Lease, the Debtor is obligated to pay rent, sales tax, and other amounts, as more particularly described in the Lease, with the minimum rent and associated sales tax payable monthly in advance on the first day of each and every month during the term of the Lease.  Under the Lease, beginning January, 2015, the aggregate monthly rent payable in advance by the Debtor was $12,892.78, increasing to $13,263.78 beginning September, 2015, with said sums consisting of monthly rent in the amount of $8,050.00, common area maintenance of $2,664.00, real estate taxes of $1,449.00, plus applicable sales tax of $729.78.  Pursuant to section 10.01 of the Lease, the Debtor is also required to pay all costs and expenses, including reasonable attorneys' fees, incurred by Valencia in enforcing any of the obligations of the Debtor under the Lease.

5.        The Debtor defaulted on its obligations under the terms of the Lease by failing to pay certain amounts due and owing to Valencia, including but not limited to rent and sales tax, for the months of June, 2015 and all subsequent payments due thereafter.  In accordance with the provisions of the Lease and pursuant to applicable Florida law, Valencia sent the Debtor a three-day notice dated January 12, 2016 (the "Notice"), informing the Debtor of its default and demanding that the Debtor cure the default of rent then past-due ($130,325,87) or return possession

---

[2] Valencia succeeded to the interests of its predecessor on or about March 15, 2012.  A true and correct copy of the Special Warranty Deed evidencing the aforementioned transaction is attached hereto as **Exhibit "B."**  The Lease was also subsequently assigned to the Debtor by its predecessor in interest, Ankod, Inc., pursuant to that certain Assignment and Assumption of Lease with Consent of Landlord Agreement dated March 7, 2013 (the "Assignment").  A true and correct copy of the Assignment is attached hereto as **Exhibit "C."**

of the Premises to Valencia within three (3) days thereafter. A true and correct copy of the Notice is attached hereto as **Exhibit "D."**

      6.     Debtor failed to pay the past-due rent or return possession of the Premises to Valencia within the time set forth by the Notice.

      7.     As a result of the Debtor's failures, on January 22, 2016, Valencia filed a Complaint for Eviction from the Premises (the "Complaint") against the Debtor in the County Court, in and for Palm Beach County, Florida, styled as *Valencia Square Retail, LLC v. Ankod Enterprise, LLC d/b/a Aunt D's Child Care of Palm Beach*, Case No. 502015CC001000XXXXSB (the "Eviction Action"). A true and correct copy of the Complaint filed in the Eviction Action is attached hereto as **Exhibit "E."**

      8.     As of the filing date of the Eviction Action, the balance due to Valencia under the terms of the Lease from the Debtor was $130,325.87.

      9.     On March 16, 2016, the parties in the Eviction Action attended a court-ordered mediation conference. The mediation conference resulted in a settlement of the pending issues in the Eviction Action, and the terms of which were adopted by order of the court (the "Settlement Order"). A true and correct copy of the Settlement Order is attached hereto as **Exhibit "F."**

      10.    The Settlement Order provides, in pertinent part, that:

> "Ankod Enterprise, LLC [Debtor] shall vacate the Premises and return possession to Valencia Square Retail, LLC [Landlord] on or before March 31, 2016."

      11.    The Debtor failed to comply with the terms of the Settlement Order. Rather, instead of vacating and returning possession of the Premises to Valencia on or before March 31, 2016, the Debtor opted to file for relief under the Code on March 31, 2016.

12.     As of the Petition Date, the balance due to Valencia under the terms of the Lease from the Debtor was $147,853.43.

13.     Through the filing of this Motion, the Debtor has not yet filed its schedules or other financial documents in this case.[3]  However, by its own admission, the Debtor is at least six (6) months delinquent in its payment of rent under the terms of the Lease [DE 3 at ¶ 5].[4]

14.     Since the Petition Date, the total amount of post-petition rent due under the Lease is $13,691.64, consisting of the pro-rated amount of $427.86 for March, 2016 and $13,263.78 for April, 2016.  Notwithstanding, the Debtor has failed to make any payment of rent to Valencia as required under the terms of the Lease.

## II.     **RELIEF REQUESTED**

### A. *Stay relief is warranted under Section 362(d)*

14.     11 U.S.C. § 362(d) states, in relevant part, that:

> [o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying, or conditioning such stay-(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; (2) with respect to a stay of an act against property under subsection (a) of this section, if---(A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization…

11 U.S.C. § 362(d)(1).

15.     Section 362(g) also provides that:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--

---

[3] Pursuant to Court Order dated April 18, 2016, the Debtor has through and including April 28, 2016 to cure its deficient filing [DE 22].

[4] The timing of the Debtor's petition, along with its delay in submitting schedules or other financials and the filing of the motion to cure [DE 3] (which doesn't actually reference how the Debtor intends to cure its pre-petition default under the Lease) all seem to suggest a lack of good faith by the Debtor in filing this bankruptcy action.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>
> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

16.     Section 362(d)(1) is intended to "balance the interests of the creditors and the debtor." *See, e.g., In re Indian Palms Association, Ltd. (Nantucket Investors v. California Federal Bank),* 61 F. 3d 197 (3rd Cir. 1995). While the term "cause" is not defined in 11 U.S.C. § 362(d)(1), courts decide whether cause exists to lift the stay on a case-by-case basis. *See In re Murray Industries, Inc.,* 121 B.R. 635, 636 (Bankr. M.D. 1990) (citing *In re McDonald*, 755 F. 2d 715, 717 (9th Cir. 1985)). The court looks to the totality of the circumstances in each particular case when making this determination. *See In re Bryan Road, LLC,* 382 B.R. 844 (Bankr. S.D. Fla. 2008).

17.     Here, the balancing test here weighs overwhelmingly in Valencia's favor, and cause exists to lift the stay. *See In re Taylor,* 1997 WL 642559, at *1 (S.D.N.Y 1997) (finding that the debtor's failure to pay post-petition rent constituted grounds for lifting the automatic stay). Based on the Debtor's continued failure to pay any rent accruing post-petition, the complete absence of a record to suggest that the Debtor will have the ability to begin its Lease payments anew, or otherwise cure the default, in addition to the lack of good faith by the Debtor in filing for relief under the Code[5], the granting of stay relief is the only appropriate and equitable outcome in the instant matter.

---

[5] Courts have also recognized a debtor's lack of good faith in filing for Chapter 11 relief as a cause for granting relief from the automatic stay pursuant to Section 362(d)(1). *See Double W Enterprises, Inc.,* 240 B.R. 450 (Bankr. M.D. Fla. 1999)(citing *In re Natural Land Corp.,* 825 F. 2d 296 (11th Cir. 1987)).

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

18.     An affidavit in support of this Motion executed by Jorge Morell, Vice President of Valencia's property management company, is also attached hereto as **Exhibit "G."**

> ### *B. In the alternative, the Debtor should be required to pay post-petition rent obligations due under the Lease*

19.     The Debtor is required to pay the post-petition rent due under the Lease pursuant to the plain language of 11 U.S.C. § 365(d)(3) of the Code, which provides, in pertinent part, that:

> The trustee *shall timely* perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.  (Emphasis added).

11 U.S.C. § 365(d)(3).   The Debtor is in default of its post-petition Lease payments and in noncompliance with Section 365(d)(3) of the Code.

20.     Section 365(d)(3) requires the timely performance by the trustee of all the obligations of the Debtor until such time as the Lease is assumed or rejected.  *See In re Florida Lifestyle Apparel, Inc.,* 221 B.R. 897, 900 (Bankr. M.D. Fla. 1997) ("The plain language of Section 365(d)(3) mandates the trustee to comply with all obligations of the debtor with regard to any unexpired lease of non-residential real property until it is assumed or rejected regardless of Section 503(b)(1)").

21.     The purpose of Section 365(d)(3) is to protect commercial landlords from being forced to extend credit to an estate during the time given for assumption or rejection of the lease.  *See In re CHS Electronics,* 265 B.R. 339, 343-44 (Bankr. S.D. Fla. 2001); *see also In re Telesphere Communications,* 148 B.R. 525, 529 (Bankr. N.D. Ill. 1992) (noting that Section 365(d)(3) was enacted "[b]ecause such a lessor, unlike utilities, trade creditors, or post-petition employees, cannot utilize the self-help remedy of terminating their relationship with the debtor if prompt payment is not assured, the lessor becomes, in effect, an 'involuntary extender of unsecured

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

credit'"). Here, if the Debtor is allowed to avoid paying post-petition rent, it will have the effect of turning Valencia into an "involuntary extender of unsecured credit."

22.     Further, lease obligations arising within the first 60 days after the Petition Date are entitled to administrative priority as a matter of law pursuant to Section 365(d)(3). *See In re CHS Electronics,* 265 B.R. at 341 (proof of actual use and benefit not required for claim under § 365(d)(3)); *see also In re Jeffrey Kirsch,* 242 B.R. 77, 79 (Bankr. M.D. Fla. 1999) ("The majority of courts interpreting Section 365 find that lessors of nonresidential real property,... are entitled to payment of rent due under an unexpired lease as an administrative claim for the period running from the filing of the petition until the rejection of the lease").

23.     Based on the plain language of § 365(d)(3), Valencia seeks an order from this Court requiring the Debtor to immediately honor its post-petition obligations under the Lease, including but not limited to the payment of rent, in addition to the fees and costs incurred by Valencia to enforce the terms of the Lease, and that the Court further provide that in the event the Debtor fails to comply, it shall be ordered to surrender possession of the Premises and immediately vacate same, with Valencia being granted automatic stay relief to pursue its non-bankruptcy remedies. *See In re C.A.F. Bindery, Inc.,* 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996) (landlord given automatic stay relief to pursue state court eviction upon debtor failing to pay full amount due post-petition for rent within the time period prescribed by court).

### C.   *Likewise compelling the Debtor to assume or reject the Lease is equitable under the circumstances*

24.     Further, the harm to Valencia caused by the Debtor's continuing defaults under the Lease, coupled with the uncertainty of future performance by the Debtor, far outweighs any harm caused by requiring the Debtor to decide whether to assume or reject the Lease within a shortened period of time.

25.     As such, Valencia requests that the Court, pursuant to § 365(d)(2) of the Code, order the Debtor to determine within a shortened period of time whether to assume or reject the Lease.  Section 365(d)(2) allows a creditor who cannot afford to be left in limbo about its status *vis-à-vis* the estate to ask the court to impose a deadline on the debtor to decide whether to accept or reject a lease.  *See In re Sae Young Westmont-Chicago,* 276 B.R. 888, 893 (Bankr. N.D. Ill. 2002).  The standard for a court to apply in determining whether or not to set a deadline to assume or reject a lease before confirmation is that it should balance the debtor's need to carefully consider whether rejecting the lease is in the best interest of the estate with the landlord's interest in knowing whether the debtor will perform under the subject lease.  *See Matter of Whitcomb & Keller Mtg. Co., Inc.,* 715 F. 2d 375, 379 (7th Cir. 1983).

26.     In the instant matter, based on the Debtor's admitted defaults under the Lease, in addition to the lack of any record that would support the Debtor's claim that it has the financial wherewithal to cure such defaults or comply with its post-petition obligations under the Code, it is evident that the balances weighs in favor of requiring the Debtor to make an immediate decision concerning the Lease.  Further, the Debtor should not be permitted to enjoy the benefits of the Lease without paying post-petition rent, and due to the Debtor's failure to comply with its obligations under Section 365(d)(3), good cause exists to compel the Debtor to decide whether to assume or reject the Lease immediately under Section 365(d)(2).

## III.    CONCLUSION

Based upon the foregoing, Creditor/Landlord, VALENCIA SQUARE RETAIL, LLC, respectfully requests that this Court enter an Order (i) granting Valencia relief from the automatic stay; or, alternatively, (ii) compelling the Debtor to pay post-petition rent and fulfill all contractual obligations as defined within 11 U.S.C. § 365(d)(3); (iii) compelling the Debtor to assume or reject

the Lease within a shortened period of time pursuant to 11 U.S.C. § 365(d)(2); (iv) requiring the Debtor to vacate and surrender possession of the Premises in the event that it fails to pay the post-petition rent; and (v) granting such other and further relief as the Court deems just and proper.

WE HEREBY CERTIFY that we are admitted to the Bar of the United States District Court for the Southern District of Florida and are compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed this 20th day of April, 2016, with the Clerk of the Court using the CM/ECF system and that a true and correct copy of the foregoing was served via CM/ECF electronic transmission upon those parties who are registered with the Court to receive notifications in this matter.

Respectfully submitted,

/s/David H. Haft
Ricardo A. Reyes (rar@tobinreyes.com)
Florida Bar No. 864056
David H. Haft  (dhaft@tobinreuyes.com)
Florida Bar No. 68992
*Attorneys for Valencia Square Retail, LLC*
TOBIN & REYES, P.A.
225 N.E. Mizner Boulevard, Suite 510
Boca Raton, Florida 33432
Tel:     (561) 620-0656
Fax:    (561) 620-0657
Primary Email: eservice@tobinreyes.com
Secondary: mhorton@tobinreyes.com
Secondary: dboentgen@tobinreyes.com