Page 1

1          UNITED STATES BANKRUPTCY COURT
             SOUTHERN DISTRICT OF FLORIDA
2              WEST PALM BEACH DIVISION

3

4

5

IN RE:                    CASE NO. 16-14706-BKC-EPK
6
ANKOD ENTERPRISE, LLC,
7
              Debtor.
8    _____/

9

10

                         ECF# 53, 45
11

12

                       May 25, 2016
13

14          The   above-entitled   cause   came   on  for

15   hearing   before   the   HONORABLE   ERIK   P.   KIMBALL,

16   one of the  Judges  in the UNITED  STATES  BANKRUPTCY

17   COURT, in and for the SOUTHERN  DISTRICT  OF FLORIDA,

18   at 1515 North  Flagler  Drive, Courtroom  801-B,  West

19   Palm Beach, Palm Beach County, Florida, on Wednesday,

20   May 25, 2016, commencing at or about  2:27 p.m.,  and

21   the following proceedings were had:

22

23       Transcribed from a Digital Audio Recording by:
               Margaret Franzen, Court Reporter
24

25

```
1              APPEARANCES:

2


3         VAN HORN LAW GROUP, by
        ANDREW M. BELLINSON, ESQUIRE
4          on behalf of the Debtor

5


6           TOBIN & REYES, by
         DAVID H. HAFT, ESQUIRE
7    on behalf of Valencia Square Retail, LLC

8


9   OFFICE OF THE UNITED STATES TRUSTEE, by
         ARIEL RODRIGUEZ, ESQUIRE
10            (Via CourtCall)
            Attorney/Advisor
11  on behalf of the Office of the United States Trustee

12


13           ALSO PRESENT:

14


15      MARGARETTE OCCENAD, Debtor
    ECRO - Electronic Court Reporting Operator

16

                - - - - - - -
17

18

19

20

21

22

23

24

25
```

```
 1                THE COURT:  All right.  The next case is
 2   Ankod Enterprise, LLC.
 3                Is Mr. Rodriguez on the telephone?
 4                MR. RODRIGUEZ:  Good afternoon, Your Honor.
 5   Ariel Rodriguez on behalf of the United States
 6   Trustee.
 7                THE COURT:  Good afternoon.
 8                MR. BELLINSON:  Good afternoon, Your Honor.
 9   Andrew Bellinson on -- on behalf of the Van Horn Law
10   Group for the ---
11                THE COURT:  Very good.  Good afternoon.
12                MR. HAFT:  Good afternoon, Your Honor.
13   David Haft on behalf of creditor, Valencia Square
14   Retail, LLC.
15                THE COURT:  Okay.  Very good, and you're --
16   you're actually -- you're a member of Van Horn Law
17   Group, not representing --
18                MR. BELLINSON:  Of counsel.
19                THE COURT:  -- the law firm?
20                MR. BELLINSON:  Correct, Your Honor, on
21   behalf of.
22                THE COURT:  Okay.  Very good.
23                MS. OCCENAD:  Margarette Occenad.
24                THE COURT:  Could you come over and state
25   you name more clearly, I want to make sure it's
```

1    recorded.

2              MS. OCCENAD:  Margarette Occenad.

3              THE COURT:  Good afternoon.

4              MS. OCCENAD:  Good afternoon, sir.

5              THE COURT:  All right.  Where are we today,

6    renewed motion for relief from stay, there is a

7    response, and an application to employ a CPA.

8              MR. BELLINSON:  I'm happy to take care of

9    the application for the CPA, take care of the easy

10   matter first, that's Docket Entry 53, Your Honor.

11             I believe all the paperwork has been

12   presented to you.

13             THE COURT:  And -- and are there any

14   objections to the application?

15             It seems like a standard CPA

16   application.

17             MR. BELLINSON:  Yes, Your Honor.

18             THE COURT:  Are there any objections?

19             MR. HAFT:  No objection, Your Honor.

20             THE COURT:  Very good.  It's ---

21             MR. RODRIGUEZ:  No objection, Your Honor.

22             THE COURT:  Okay.  It's approved, you may

23   submit a proposed order.

24             Thank you.

25             MR. BELLINSON:  Thank you, Your Honor.

```
 1              THE COURT:  Okay.  So the relief from stay
 2    motion.
 3              MR. HAFT:  Yes, Your Honor.
 4              Your Honor, this is the landlord's
 5    renewed motion for relief from stay, which is at
 6    Docket Entry 45.
 7              If Your Honor may recall, we were here
 8    a few weeks ago on our initial motion for relief
 9    and to compel the assumption or rejection on an
10    expedited basis as a result of an ongoing
11    prepetition default under the terms of the
12    commercial lease, in excess of ---
13              THE COURT:  Right.  Wasn't the assumption
14    of that motion, was that there was, in fact, an
15    unexpired lease under Section 365?
16              Why -- why file such a motion unless
17    there is a lease?
18              MR. HAFT:  Well, Your Honor, certainly our
19    initial motion was premised on the fact that the
20    debtor was delinquent on payment of any postpetition
21    rents.
22              So we filed that motion hoping to get a
23    hearing on an expedited basis, which we were
24    unable to do, due to obviously the Court's
25    unavailability, and within that time period,
```

1    which was approximately three or four weeks, the

2    debtor tendered payments for postpetition rent.

3              We have remained consistent in our

4    position that the lease itself, the debtor's

5    possessory rights, were extinguished pursuant to

6    the state court's order entered on March 16th,

7    which the order itself, unfortunately, it is of

8    very poor quality, it was written on the carbon

9    paper that is used in the state courts.

10             However, Paragraph 10 of our motion

11   recites the content of the order in its entirety.

12             THE COURT:  I was able to read it.

13             MR. HAFT:  Oh, well, you have better eyes

14   than I do.

15             That being said, Your Honor --

16             THE COURT:  Hopefully not --

17             MR. HAFT:  -- the order --

18             THE COURT:  -- for your sake.

19             MR. HAFT:  -- the plain language of the

20   order that was entered on March 16th by Judge Corlew

21   in the eviction action that was filed against the

22   debtor for their failure to make payments of rent due

23   and owing from June 2015 forward, is -- is clear.

24             It -- it is intended to be a final

25   order requiring the debtor to vacate and return

1    possession of the premises by March 31st, and

2    while the order itself does contain additional

3    language, the additional language that's included

4    is merely intended to provide the landlord with a

5    mechanism to recover its costs and fees, and to

6    enlist the assistance of the Court should the

7    debtor fail to comply with the terms of the final

8    order.

9              The order extinguishes the debtor's

10   rights effect -- of possession in the property

11   effective March 16th, and the additional language

12   doesn't change that fact.

13             As I stated, it's merely a mechanism

14   for the landlord, should the debtor fail to

15   comply, which they ultimately did, to enlist the

16   Court's assistance in having them physically

17   removed from the premises.

18             The facts of this case are similar to

19   Key Largo Water Sports, a case out of this

20   district that was before Judge Mark back in 2007,

21   and in that particular case, if -- if Your Honor

22   is inclined as a brief background or if you're

23   familiar, I'll move on ---

24             THE COURT:  No, please go ahead.

25             MR. HAFT:  In that case, the commercial

1   landlord obtained a final judgment similar to what we

2   have here, and a writ of possession was, in fact,

3   issued, but before it could be executed upon by

4   the sheriff, the debtor filed for Chapter 11

5   protection.

6           Judge Mark ultimately decided that the

7   judgment of eviction in favor of the landlord

8   extinguished the debtor's possessory rights in

9   the leased premises, and they were precluded --

10  they were prohibited under 365 from assuming the

11  lease in that ---

12          THE COURT:  Because it was not an unexpired

13  lease, it was, in fact, an expired lease.

14          MR. HAFT:  Well, Your Honor, Judge Mark's

15  opinion in that case focuses more on the fact that

16  the final judgment is what extinguished their

17  rights.

18          It wasn't that the lease itself had

19  been -- he didn't ---

20          THE COURT:  I know, but there wasn't an

21  unexpired lease to assume in that case; correct?

22          MR. HAFT:  Well, it became unexpired or the

23  lease was expired by virtue of the extinction.

24          THE COURT:  Termination, right.

25          MR. HAFT:  But the issue of termination

1    itself was actually addressed in that opinion, as

2    well, and Judge Mark took the position ---

3              THE COURT:  Okay.  Maybe you're missing my

4    point.

5              Section 365 applies only to executory

6    contracts and unexpired leases, and so the reason

7    to determine whether the lease has been

8    terminated prepetition is, in part, not just to

9    determine what the debtor's rights are at that

10   moment, but to determine whether 365 applies at

11   all, because if you have something that is a --

12   formerly a lease, but no longer so, then it

13   cannot be assumed, nor do any of the other

14   provisions of 365 apply.

15             MR. HAFT:  Correct.  I'm sorry, I didn't

16   understand what Your Honor was asking for.

17             THE COURT:  Right.  Well, my concern there

18   is that you've previously come to the Court and asked

19   me to do two things under 365, one is order the

20   debtor to continue to pay under a provision that only

21   applies to an unexpired lease; and the other is order

22   the debtor to assume the lease, which also only

23   applies to an unexpired lease, and now you've come

24   back and told me that there is no lease.

25             MR. HAFT:  Well, Your Honor, certainly the

1    fact is that, as I mentioned earlier, we -- our

2    initial motion was based entirely on the continued

3    failure to remit payment by the debtor.

4              THE COURT:  Right, which would be

5    potentially an administrative expense for the value

6    obtained by the debtor by staying in a place which

7    you now say they have no legal right to be in, but

8    more than half of the motion that you originally

9    filed is based on the -- on the assumption, more than

10    the assumption, it is -- I'm trying to find the ECF

11    number of it so I can -- it's 26, filed on the 20th

12    of April, which I've already had a hearing on.

13              MR. HAFT:  Yes.

14              THE COURT:  That motion assumes that this

15    is -- there's actually a lease or else most of it

16    doesn't apply at all.

17              MR. HAFT:  I -- I would agree with that,

18    Your Honor, and, quite frankly, after further review,

19    after going through the hearing on that matter and

20    hearing Your Honor's ruling and -- and his findings,

21    once the order was -- the state court order was

22    looked upon a little bit further and analyzed in more

23    detail, and further research was conducted, and that

24    led us to Key Largo in -- in -- as it's applicable

25    here, certainly, we don't believe that there --

```
 1   there's a lease here to be assumed at the end of the
 2   day.
 3              We believe that the state court order
 4   is clear on its face, the debtor's possessory
 5   interest in the premises is -- was terminated
 6   March 16th, and therefore, they're not entitled
 7   to protection under 362(a) at this juncture.
 8              Thank you.
 9              THE COURT:  Thank you.  Just a moment.  I'm
10   just looking at the order that I entered on that
11   motion.  Just give me a moment before you come back
12   to the podium.
13              MR. BELLINSON:  Yes, Your Honor.
14              THE COURT:  All right.  Thank you, yes.  I
15   was just looking back over my own notes from the
16   hearing on May 5th on the initial motion filed by the
17   landlord.
18              MR. BELLINSON:  Thank you, Your Honor.
19              I believe, as you were stating, that --
20   that 365 allows the debtor to assume a nonexpired
21   lease.
22              I believe it -- Mr. Haft, he -- he
23   speaks to the order, the mediation order, that
24   was entered, and my reading of it is that certain
25   steps needed to be taken in -- by March 31st, and
```

```
 1   if they were not taken, then, and I have it in
 2   two different forms, one that's easily legible
 3   and the actual, I'm going to go to the easily
 4   legible version of it.
 5            It speaks to, first if it is not -- if
 6   property is not surrendered on March 31st, the
 7   landlord would then be entitled upon filing an
 8   affidavit of default; secondly, to an entry of an
 9   ex parte final judgment of possession; and then
10   thirdly, an immediate issuance of writ of
11   possession.
12            That was all to occur after March 31st,
13   which was the date that the -- the debtor ---
14            THE COURT:  So the debtor had possession,
15   and there was no state law right for the landlord to
16   regain possession on the time -- at the time the
17   petition was filed?
18            MR. BELLINSON:  It was a -- it was an
19   active lease, and I believe still an active lease.
20            THE COURT:  Oh, that's a different
21   question.
22            MR. BELLINSON:  No, I understand your ---
23            THE COURT:  You're saying the outcome of
24   that order was not the lease is over, this is all
25   that's left?
```

```
 1              MR. BELLINSON:  No, the ---
 2              THE COURT:  This did not replace the lease,
 3    there's still a lease?
 4              MR. BELLINSON:  Yes, Your Honor, there was
 5    still a lease.
 6              I -- I believe that in Key Largo Water
 7    Sports there was a final judgment on the issue of
 8    whether there was a lease or not prior to -- to
 9    the filing of the bankruptcy, and in that matter,
10    it was as if the tenant was a holdover.
11              In this situation, this was an active
12    lease.  The debtor is operating a childcare
13    center.  She continues to operate the childcare
14    center for -- there's 91 children there.  She is
15    doing better now than she's ever done, I believe
16    in that location, and there -- it's vital to her
17    reorganization and -- and I believe it's -- it's
18    feasible.
19              I believe ---
20              THE COURT:  Well, let me just go back --
21              MR. BELLINSON:  Okay.
22              THE COURT:  -- because my focus right now
23    is whether -- there are really two things I'm
24    focusing on, one was not argued in the documents.
25              My primary focus relates -- relating to
```

1    what's presented to the Court in writing, is did

2    the debtor have anything more than just a right

3    to possession under state law at the time the

4    petition was filed, and the debtor would say

5    there was, in fact, a lease.

6              MR. BELLINSON:  Yes.

7              THE COURT:  I -- how do you reach that

8    conclusion in light of the provision that says, and

9    the debtor agreed, apparently, the debtor will vacate

10   by a given date, and if the debtor doesn't vacate,

11   then the landlord can get help from the Court in

12   order to kick the q out.

13             MR. BELLINSON:  Right, if the debtor does

14   not -- that was not a -- that mediation agreement was

15   basically dealing with who would pay legal fees,

16   which party would pay legal fees.

17             It was, if you agree to this, you

18   surrender the property on the 31st of March, each

19   party will assume their own legal fees.

20             I'm -- our firm was not involved in

21   this matter.  I -- I don't even understand what

22   the -- what the agreement was, because the

23   parties were not satisfied, and clearly this

24   was -- this was a -- a step because they wouldn't

25   be asking for a subsequent final order from the

```
 1    Court if it was a final order from the Court.
 2                THE COURT:  No, I -- I don't -- I didn't
 3    understand that.
 4                If the debtor voluntarily vacated under
 5    this agreed order, then there would be no need
 6    for any -- any -- any other of the actions that
 7    would follow from the failure to abide by an
 8    agreed order.  So ---
 9                MR. BELLINSON:  How -- however, Your Honor,
10    there's -- there's still the matter of unpaid rents
11    that still had to be determined and they're rather
12    significant.
13                And, in fact, I -- I believe there's
14    some ongoing litigation regarding the unpaid
15    rents or accelerated rents under this lease that
16    just came to light today for me, that there was
17    actually something ongoing where it appears as if
18    the debtor is not involved, but it's certainly --
19    seems as if it's not clear.
20                THE COURT:  You mean there's a party other
21    than the debtor being pursued in the state court?
22                MR. BELLINSON:  Guarantors.
23                THE COURT:  Okay.  Well ---
24                MR. BELLINSON:  No, and -- and that's --
25    and that's reasonable, Your Honor, but it just came
```

```
 1    to light, and in reading the pleadings, it's really
 2    not a hundred percent.  I -- I think when there's a
 3    ruling, they're looking for a default judgment on
 4    that, and when -- it will not be -- there's --
 5    I'll -- I'll bring that up at another point, Your
 6    Honor.
 7              I -- I'd rather ---
 8              THE COURT:  Let me just point out something
 9    to you.
10              I am troubled by the fact that the
11    landlord has come in and made arguments as though
12    there is a lease, but when the debtor comes in
13    and tells --- because if the debtor thinks
14    there's a lease -- there's still a lease, right,
15    and there's only two choices, assume or reject.
16              Is the debtor intending to attempt to
17    assume what it thinks is the lease, because the
18    debtor would need to cure?
19              MR. BELLINSON:  Correct, Your Honor, and --
20    and that has already been in discussion, and ---
21              THE COURT:  Well, is it possible?
22              MR. BELLINSON:  It's possible under
23    reasonable terms and there's also, perhaps ---
24              THE COURT:  No, no, no, no, no.  The
25    landlord doesn't have to agree to reasonable terms.
```

1    The landlord can say, pay everything that you owe.

2                MR. BELLINSON:  Correct, Your Honor.

3                THE COURT:  Right.

4                MR. BELLINSON:  There -- there's a

5    potential white knight involved here.

6                THE COURT:  Not the first time I've heard

7    that --

8                MR. BELLINSON:  Okay.

9                THE COURT:  -- as you can probably guess,

10   but one of my concerns is, I would need to conclude

11   that there is, in fact, an unexpired lease, separate

12   and apart from my concern about whether the party

13   moving today has previously made an inconsistent

14   legal argument in hopes of getting other relief that

15   was to its benefit.

16                MR. BELLINSON:  Yes, Your Honor.

17                THE COURT:  Okay.  So I'm trying to figure

18   out how -- even if I were to deny today's motion, how

19   is the debtor going to move forward on this if it is

20   your belief that this is actually an unexpired lease?

21                MR. BELLINSON:  The debtor has until, I

22   believe, July 31st to assume or reject her -- the

23   lease.  The debtor has been making ---

24                THE COURT:  And the rent -- and the

25   postpetition rent is being paid --

1              MR. BELLINSON:  Yes.

2              THE COURT:  -- at the contract rate

3    including -- it is?

4              MR. BELLINSON:  Yes, more than $26,000 has

5    already been proffered, and the next payment is not

6    due until next week on the 1st, and the debtor will

7    be in a position to make that payment and those

8    payments are ---

9              THE COURT:  Actually caught up?

10             MR. BELLINSON:  Yes.

11             THE COURT:  Go ahead, go ahead.

12             MR. HAFT:  Excuse me, Your Honor, yes.

13             THE COURT:  Including the gap period?

14             MR. BELLINSON:  Yes.

15             MR. HAFT:  Yes, Your Honor, the debtor has

16   remitted -- at the meeting of creditors last week,

17   the debtor reissued checks out of the D.I.P. account

18   for the postpetition rent amounts that have accrued

19   since the filing of the petition, which have not been

20   cashed, Your Honor, as our position is we believe

21   there's not a lease that would necessitate ---

22             THE COURT:  It doesn't prevent your client

23   from cashing the checks, by the way.

24             But, you know, it's like when your

25   client calls and you think somebody is insolvent,

1    and they've just made payment on your invoice,
2    the answer is yes, deposit it immediately.  You
3    might be sued and have to pay it back at a later
4    time.
5            All right.  So, okay, very interesting.
6    I have two competing problems, one is I am
7    concerned that the tenor of the order -- by the
8    way, the operative text of the order that -- that
9    is referred to in the motion today, the state
10   court order, is actually quoted in the original
11   motion filed by the landlord seeking relief from
12   stay or relief under Section 365.  It's not
13   argued, but it's quoted, which is fascinating.
14           The -- the landlord has taken the
15   position previously, that this was, in fact, an
16   unexpired lease.  There is no way you can ask for
17   the two forms of relief requested in the first
18   motion that came before the Court unless that is,
19   in fact, the case.
20           Those two forms of relief are payment
21   of postpetition rent, which apparently the debtor
22   has complied with, consistent with my direction
23   during a hearing that Mr. Van Horn attended back
24   on the 5th of May, and the other is a request
25   that the debtor be compelled to assume or reject

1    this allegedly unexpired lease, a provision which

2    obviously does not apply unless it is, in fact,

3    something subject to assumption, and my answer to

4    that was, it's an unexpired lease of

5    nonresidential real property and the debtor has

6    120 days to make up its mind, and I'm not going

7    to do that in the first couple of weeks of the

8    case.

9              So what I have is a judicial estoppel

10   problem, a terrible phrase, because it has

11   nothing to do with me being estopped, it has to

12   do with parties making inconsistent arguments in

13   order to obtain relief in -- in their favor.

14             On the other hand, I don't see how this

15   is truly an unexpired lease.  I don't know how

16   you interpret the order of the state court other

17   than there is no ongoing lease, all you have is a

18   right to possession, and if they -- if the debtor

19   doesn't do what they're supposed to do, they have

20   to get out.  So I'm caught between a rock and a

21   hard place.

22             I'd love to deny the motion because of

23   judicial estoppel, which you didn't argue, but on

24   the other hand, as a factual matter, I don't see

25   how there's an unexpired lease here.

1          MR. BELLINSON:  Well, I -- I read it as

2    definitely being an unexpired lease.

3               There was a condition precedent before

4    they could get their final ruling in, and I

5    believe that it was -- as in Key Largo, it was

6    the final ruling that determined that the lease

7    had been completed, and that is where the -- the

8    legal issue, where the debtor in that case no

9    longer had any legal right to own the actual

10   possession of it.

11              In this case, in our case ---

12          THE COURT:  It wasn't a ruling with regard

13   to the termination of the lease, it was just the

14   parties agreeing that they would separate, and they

15   might continue to fight about the meaning of the

16   lease, including the amount of rent owed, but there's

17   no specific finding that the lease terminated.

18          MR. BELLINSON:  Right, and -- yes, Your

19   Honor.  I definitely believe that.  I just -- it's if

20   then, if then, and -- and I also don't think that the

21   parties or at least the -- the debtor realized that

22   this was the final moment, although, I'm perhaps

23   speaking out of turn.

24              But reading it, reading it just in

25   clear English, it certainly seemed like until the

1    31st, you have the right to be there, you have

2    the -- it is your lease, and upon the 31st, if

3    you get it to us, we will absolve you of the

4    legal fees that it cost us to pursue this matter,

5    just to this extent, not the underlying

6    issues ---

7               THE COURT:  And there was no finding by the

8    Court, and it's not a situation where there's a

9    complaint to terminate the lease and for damages, and

10   there has actually been an order on that relief,

11   that -- that's what you're saying?

12              MR. BELLINSON:  Yes, yes, Your Honor, and I

13   believe there's --

14              THE COURT:  Yes.

15              MR. BELLINSON:  -- a specific termination

16   clause in -- in the fine print of the -- of the

17   lease, and I have -- that specifically says if they

18   are to terminate the lease, they must give notice to

19   the franchisor of the entity, and I've seen

20   nothing ---

21              THE COURT:  The childcare entity is a

22   franchise?

23              MR. BELLINSON:  It is -- it is a

24   franchise -- franchisee.

25              THE COURT:  Franchisee.

```
1              MR. BELLINSON:  It's not -- in the
2    agreement ---
3              MS. OCCENAD:  In the agreement ---
4              THE COURT:  Okay.  This is probably not
5    important for today.
6              MR. BELLINSON:  Okay.
7              THE COURT:  All right.  Would you like to
8    respond?
9              MR. HAFT:  Yes, Your Honor, I would like --
10   I'll be brief, just two quick points.
11              As to the finality of the state court
12   order that required the debtor to take action,
13   Florida state law is -- is very clear as to when
14   an order is determined to be final.
15              THE COURT:  I don't think he's saying the
16   order is not final.  He's just saying the order
17   isn't -- does not include a finding with regard to
18   whether the lease continues or not.
19              MR. HAFT:  Well, Your Honor, to -- to that
20   point, I -- I would reference the Court's attention
21   to Key Largo Water Sports again, specifically where
22   Judge Mark states that although a terminated lease
23   cannot be assumed, this does not mean that the
24   converse is true, that is the fact that a lease was
25   not terminated prepetition does not mean that it may
```

1  be assumed.

2          To the contrary, whether or not

3  terminated for all purposes, a tenant's property

4  interest, its right of possession, is

5  extinguished under state law when a final

6  judgment of eviction is entered.

7          That's the case before the Court today,

8  Your Honor, the right ---

9          THE COURT:  Well, we don't have a judgment

10  of eviction --

11          MR. HAFT:  Well, but ---

12          THE COURT:  -- we have an agreement of the

13  debtor to vacate on a particular date.

14          MR. HAFT:  Well, Your Honor, we would --

15  our position is that that order is, in fact, a final

16  order and because there were -- the Court, in order

17  to provide the landlord with an additional mechanism

18  to award it fees and to have the sheriff go out and

19  physically remove the tenant from the premises,

20  that's the only reason why that additional language

21  was included in the order.

22          Just because something is not called a

23  final judgment or final order, doesn't make it

24  not the case.  I think on its face this is a

25  final judgment of eviction.

1           THE COURT:  Okay.  I think you've gotten

2    close to the right argument, and I think the analysis

3    has to be, if the debtor at that point no longer had

4    an ability to -- to occupy the premises as a tenant,

5    then there is no tenancy and there obviously can't be

6    a lease, that's what you're saying?

7           MR. HAFT:  Yes, Your Honor.

8           THE COURT:  But there was no final

9    determination with regard to possession prior to the

10   petition date, was there?

11          MR. HAFT:  Well ---

12          THE COURT:  There was this agreed order,

13   they'll leave, and if they don't leave, you have to

14   go back and ask for the other stuff.

15          MR. HAFT:  But the other stuff, Your Honor,

16   is an award of fees and the retention of the sheriff

17   to physically remove the tenant from the -- the

18   premises.

19          It doesn't change that their rights

20   were extinguished as of March 16th, Your Honor.

21          THE COURT:  You're saying there is no

22   lease, all they have was bare possession?

23          MR. HAFT:  That's correct.

24          THE COURT:  Okay.  Understood.  All right.

25   Yes, you have one last word?

1              MR. BELLINSON:  Yes, Your Honor.

2              THE COURT:  I'm not going to rule right

3     now.  I want to go and think about this.

4              Yes.

5              MR. BELLINSON:  Your Honor, the order

6     specifically says, if tenant does not return

7     possession, landlord shall be entitled upon filing of

8     an affidavit of default, what are they defaulting --

9              THE COURT:  They're defaulting under that

10    order.

11             MR. BELLINSON:  -- between entry of

12    ex parte final judgment for possession and immediate

13    issuance of a writ of possession.

14             THE COURT:  Right, which is something that

15    you can use to cause the sheriff to go and physically

16    remove people.

17             MR. BELLINSON:  Yes, Your Honor.

18             THE COURT:  So, the quesion -- but the

19    question -- there's no doubt the debtor still had

20    possession on the petition date.

21             The question is whether there was still

22    a lease.

23             MR. BELLINSON:  It just appears as if the

24    final part of the order, this is a bargain for who

25    would have to pay attorney's fees.

```
 1              THE COURT:  All right.  Let me just point
 2   out to you, let's say you have a commercial lease or
 3   any lease, for that matter --
 4              MR. BELLINSON:  Yes, Your Honor.
 5              THE COURT:  -- but a commercial lease,
 6   which is what this is, and it terminates on the 30th
 7   of, you know, on the last day of January.
 8              There is no lease.
 9              MR. BELLINSON:  Correct.
10              THE COURT:  If there was a bankruptcy filed
11   the next day, there's nothing to assume, but the
12   tenant can still be in possession, and there can
13   still be a judgment of possession and a writ of
14   possession.
15              Those things have nothing to do with
16   there being a lease, it has to do with the fact
17   that somebody is holding over, in this instance,
18   or in possession of property that they shouldn't
19   be in.
20              MR. BELLINSON:  Right.
21              THE COURT:  Now, the question is whether
22   that order indicates that it was agreed that the
23   lease came to an end, and you say, no, you think
24   there still is a lease, and now the landlord is
25   saying that the lease came to an end, all that
```

1    remained was mere possession.

2            MR. BELLINSON:  Yes, Your Honor.  I -- I

3    think under 362(b)(10), the -- the lease states that

4    the term of the lease was from September 9th of 2012,

5    through September 9th of 2022, and I don't see

6    there's any change to the term of the lease.

7            THE COURT:  Well, nonpayment of rent and an

8    agreement.

9            MR. BELLINSON:  No, that would be a

10   default --

11           THE COURT:  Right.

12           MR. BELLINSON:  -- and there's

13   opportunities to cure.

14           THE COURT:  And you can still terminate it.

15   You're not --

16           MR. BELLINSON:  It's ---

17           THE COURT:  -- suggesting to me that --

18   that if the -- the tenant doesn't pay rent, that the

19   tenant gets to have the leasehold interest through

20   the term of the lease no matter what?

21           MR. BELLINSON:  Of course not, Your Honor,

22   but there's steps that need to be taken, an

23   eviction ---

24           THE COURT:  The argument being made is that

25   there was an agreement to skip over all of those

1    steps.

2              MR. BELLINSON:  And I -- I don't see that

3    as being the agreement that was made.  This was an

4    agreement that was, if you're going to return the

5    property to us at this point ---

6              THE COURT:  No, it's -- it's you're going

7    to return the property to us at this point or we will

8    have the ability to get the sheriff to forcibly

9    remove you.

10             MR. BELLINSON:  No, I -- I -- I'm sorry if

11   I'm misunderstanding.

12             It -- it seems like if you agree to

13   return it to us on the 31st, we won't ask you for

14   the attorney's fees that brought us this far, but

15   they still haven't gotten a legal distinction

16   that they must return it.

17             It's if they return it on the 31st ---

18             THE COURT:  Really, that's what it says?

19   It says, they shall -- doesn't it say they have to

20   turn over possession on a particular date?

21             MR. HAFT:  Your Honor, it says -- the word

22   shall is used, it's in the order.

23             THE COURT:  That's what I thought.

24             MR. BELLINSON:  Well, I'd like to --

25   because there were in his ---

Page 30

```
1                THE COURT:  Hold on.
2                MR. BELLINSON:  I'm sorry.
3                THE COURT:  Which exhibit was it?  How many
4     pages is the order?
5                MR. HAFT:  It's one page, Your Honor.  It's
6     Exhibit F.
7                MR. BELLINSON:  I have it.  It's --
8                THE COURT:  I've got it.
9                MR. BELLINSON:  -- Docket Entry 26, Sub 5.
10               THE COURT:  Ankod Enterprises, LLC, tenant,
11    shall vacate -- shall vacate the premises and return
12    possession to Valencia Square something, LLC,
13    landlord, on or before March 31, 2016.
14               If tenant does this, landlord shall
15    waive its claim for attorney's fees and costs.
16    If tenant does not tender something possession,
17    landlord shall be entitled, upon filing of an
18    affidavit of default, to entry of ex parte final
19    judgment for possession and immediate issuance of
20    a writ of possession, and landlord shall be -- I
21    can't read it -- you -- you two may know what it
22    says.
23               MR. HAFT:  Entitled to -- to reasonable
24    attorney's fees and costs.
25               THE COURT:  Oh, that makes sense, included
```

1    in the or incurred in the litigation.  That's all it

2    says.

3                Were both parties represented by

4    counsel at the time this order was negotiated?

5                MR. HAFT:  Yes, Your Honor, and counsel for

6    both parties, I believe, signed the bottom of that

7    order, not that anyone can see it.

8                THE COURT:  Well, is that a signature, I

9    can't tell?

10                MR. HAFT:  Or they provided their names and

11    Bar numbers.

12                THE COURT:  Well, I see that.

13                MR. HAFT:  Yeah.

14                THE COURT:  So, and the question is whether

15    that means that the leasehold was over and there was

16    just possession or not; right?

17                MR. BELLINSON:  No, I disagree, I don't

18    think that it -- I think there would have still

19    been ---

20                THE COURT:  I'm just stating what the two

21    alternatives are.  I said A or B, and you said no.

22                MR. BELLINSON:  Oh, I'm sorry.

23                THE COURT:  It's one or the other.  There's

24    either a leasehold that -- that was not terminated or

25    the leasehold was terminated, one or the other.

```
 1              MR. BELLINSON:  And I would say that I
 2    don't believe that the leasehold was terminated, Your
 3    Honor.
 4              THE COURT:  All right.  Let me have a look
 5    at the applicable law and the documents that I
 6    currently have.  If for some reason I think the
 7    record is incomplete, I'll let the two of you know.
 8              MR. BELLINSON:  Your Honor, I -- I think
 9    there's another dispositive case, a Judge Paskay
10    case.
11              THE COURT:  Okay.
12              MR. BELLINSON:  It's In Re: Foxfire, the
13    case number is 30 B.R. 30.
14              THE COURT:  Okay, and that says what?
15              MR. BELLINSON:  It -- it -- it further
16    investigates this same issue of whether -- whether a
17    tenant who is -- who is on the verge of losing their
18    lease ---
19              THE COURT:  Yeah, can you give me the case
20    cite again?
21              MR. BELLINSON:  I'm sorry, 30 B.R. 30, Your
22    Honor.
23              THE COURT:  30 B.R. 30?
24              MR. BELLINSON:  Yes, Your Honor.
25              THE COURT:  Wow, that may have been written
```

1    before I got out of law school.

2              MR. HAFT:  It's a 1984 case, Your Honor.

3              THE COURT:  Yeah.

4              MR. BELLINSON:  It's Judge Paskay, Your

5    Honor.

6              THE COURT:  Well, yes, he ---

7              MR. BELLINSON:  On the Bench for a long

8    time.

9              THE COURT:  Wait a minute, now the one I

10   have is Thomas Britton.  In Re: Foxfire Inn of

11   Stuart, Florida, Inc.?

12             MR. BELLINSON:  Yes, Your Honor.

13             THE COURT:  Yeah, it's written by

14   Judge Britton.

15             MR. BELLINSON:  Oh, I'm sorry.

16             THE COURT:  I'm not sure that this helps.

17   I mean, there were actions taken in the case that

18   Judge Britton had where he concluded the lease was

19   terminated before the bankruptcy, and here that is,

20   in fact, the question, does this order result in or

21   reflect a termination of the lease?

22             MR. BELLINSON:  Your Honor, as you -- as

23   you previously ruled, it -- it certainly appeared

24   that there was a lease.  They certainly were under

25   the impression there was a lease.

1           THE COURT:  Well, everybody told me that

2    there was a lease at that last hearing, so that is my

3    problem.

4           MR. BELLINSON:  And I certainly --

5    understanding that the basis of whether it was a -- a

6    lease that was going to determine -- terminate

7    March 31st at midnight or whether it was an active

8    lease, was -- was very vital, and very vital to the

9    way we argued it today.

10          It just seems that there was a

11   condition precedent that was going to occur by

12   the 31st.  By the 31st they filed their

13   bankruptcy and attempted to reorganize.

14          And I -- and I certainly believe that

15   the intent of the reorganization, and from the

16   moment the case has been filed, this has all been

17   about assuming the lease.  She's proffered

18   $26,000, she is prepared to proffer more, and we

19   are working diligently in order to try to cure

20   and assume this lease.

21          If we could have -- even -- even if

22   we -- if it's determined that this was not a

23   lease, yet you give us until the end of our

24   opportunity to assume it, we are talking about a

25   very small difference in time.  We're already 60

1    days in or almost 60 days in.

2              THE COURT:  You're saying that the debtor

3    might find an alternative location?

4              MR. BELLINSON:  I'm not saying that, but

5    that may be what we have to do.

6              THE COURT:  Okay.  Well, not that I'm

7    going --

8              MR. BELLINSON:  But -- but what I'm saying

9    is ---

10             THE COURT:  -- not that I'm going to tell

11   the debtor, counsel for the debtor-in-possession what

12   to do, but the debtor-in-possession is taking the

13   position that this is an unexpired lease.

14             Unless the secured -- excuse me, the

15   landlord agrees, then assumption includes paying

16   all of the outstanding rent under the lease,

17   which does not seem possible in this case, and so

18   it seems to me there are two options for the

19   debtor, one is renegotiate the lease and the

20   other is negotiate an exit that is consistent

21   with the debtor finding an alternative location.

22             MR. BELLINSON:  Correct.

23             THE COURT:  The landlord's counsel is

24   sitting right there and there are conference rooms

25   out in the hallway, perhaps this is the time to have

1  such a discussion or at least initiate it in such a

2  way that he can get talking with his client rather

3  than battle over this issue.

4           In the meantime, I haven't made a

5  decision because I need to go and consider

6  whether the order of the state court entered

7  prepetition reflects the termination of the lease

8  that existed at that time.

9           And then after that, I have to ask the

10  question, how important is it that the landlord

11  is taking an inconsistent position in this very

12  case and, in fact, I told the debtor that based

13  upon that position, the debtor had darn well

14  better pay all postpetition rent consistent with

15  Section 365, which, in fact, the debtor tendered

16  all postpetition rent.

17           And now we have the same landlord

18  coming forward and saying, ah-ha, no, I didn't

19  really mean that, even though I was citing

20  provisions that rely solely on there being an

21  ongoing, unexpired lease at the time the case was

22  filed.  I'm a little troubled by that.

23           I'm going to take it under advisement.

24  I will look at the law and also the documents

25  that I have, and as I said before, if I think the

1   record is incomplete, meaning if it seems to me

2   there's some fact that I don't know the answer

3   to, then I will let you know.

4           MR. BELLINSON:  Thank you, Your Honor, and

5   we will take your advice on --

6           THE COURT:  Yes.

7           MR. BELLINSON:  -- continuing to negotiate.

8           THE COURT:  I think that even if the debtor

9   is successful, you have a difficult situation, so you

10  have to figure out how to deal with that, and it may,

11  in fact, permit you to resolve this matter.

12          MR. BELLINSON:  Yes, Your Honor.

13          THE COURT:  Thank you, gentlemen.

14          MR. HAFT:  Thank you, Your Honor.

15          MR. BELLINSON:  Thank you.

16          (Thereupon, the above-proceedings were

17  concluded.)

18

19

20

21

22

23

24

25

Page 38

1

2                    CERTIFICATION

3

4    STATE OF FLORIDA:

5    COUNTY  OF  DADE:

6

7              I, Margaret Franzen, Shorthand Reporter

8    and  Notary  Public in  and for the State of Florida

9    at  Large,  do  hereby  certify  that  the  foregoing

10   proceedings  were  transcribed by me from an audio

11   recording held on the date and from the place as

12   stated in the caption hereto on Page  1 to the best

13   of my ability.

14              WITNESS  my  hand  this  22nd day  of

15   July, 2016.

16

17

18        _____

                    Margaret Franzen

19           Court Reporter and Notary Public

          in and for the State of Florida at Large

20         My Commission Expires:  April 14, 2018

21

22

23

24

25